UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 8/3/2016

LAURA HAGAN,

       Petitioner,

     v.

KATZ COMMUNICATIONS, INC.,

       Respondent.

No. 12-CV-5987 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

On July 16, 2014, the Honorable Theodore Katz (ret.), serving as arbitrator in the discrimination case between Petitioner Laura Hagan and Respondent Katz Communications, Inc., entered an arbitral award in favor of Respondent. Now before the Court is Hagan's petition to vacate that award (the "Petition") and Respondent's cross-petition to confirm it (the "Cross-Petition"). For the reasons that follow, the Petition to vacate the arbitration decision is denied, and Respondent's Cross-Petition is granted.

## BACKGROUND

In December 1999, Hagan was promoted to President of Univision Radio Sales, a division of Katz charged with "obtaining advertisers to fill radio airtime for the stations of Univision Communications." Lucciola Decl. Ex. 2, at 2. On October 14, 2008, Katz terminated Hagan's employment. *Id.* at 3. On November 4, 2008, Hagan filed a charge with the Equal Employment Opportunity Commission ("EEOC") claiming that Katz discriminated against her on the basis of her age and national origin. Petr.'s Mem. at 1. The EEOC issued a right-to-sue letter, which Hagan received on May 17, 2012. Petr.'s Reply at 6. On August 3, 2012, Hagan filed a complaint

in this Court alleging violations of Title VII and the Age Discrimination in Employment Act ("ADEA"). Petr.'s Reply at 6; Compl. at 9–10.

On September 5, 2012, the parties had a telephone conversation during which they "agree[d] that the dispute is subject to binding arbitration" in light of the arbitration clause contained in Petitioner's employment contract. Gorman Decl. Ex. E. The contract reads, in relevant part:

> The parties agree that any dispute, controversy or claim, whether based on contract, tort, statute, discrimination, retaliation, or otherwise . . . arising out of or relating to Employee's employment or termination of employment, shall, upon timely written request of either party be submitted to and resolved by binding arbitration. . . . Any claims received after the applicable/relevant statute of limitations period has passed shall be deemed null and void. . . . [I]n actions seeking to vacate an award, the standard of review to be applied by said court to the arbitrator's findings of fact and conclusions of law will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury.

Id. Ex. C, ¶ 14 (hereinafter the "Employment Agreement").

On October 2, 2012, Petitioner requested that "Respondent draft a stipulation memorializing the terms of the parties' agreement to dismiss the federal action and initiate the arbitration," which was "sent to [Petitioner's] counsel on October 16, 2012, with a request for a response by the end of the week." Lucciola Decl. Ex. 2, at 17–18. When "[t]here was no response . . . the proposed stipulation was sent again on October 25, 2012," and "[f]urther requests for a response were sent on December 8 and 12, 2012." Id. at 18. "On January 9, 2013, a slightly revised draft of the stipulation was sent to [Petitioner's] counsel for his signature" but "[b]y April 24, 2013 Petitioner had still not signed the stipulation, which was sent once again." Id.

On June 24, 2013, more than nine months after the case was filed, the parties "informed the Court that this matter would be proceeding to arbitration and that they had mutually agreed on

a forum for arbitration." Gorman Decl. ¶ 26. At that time, Petitioner's counsel "represented to the Court that it would take no more than a few days to file his demand for arbitration." *Id*. The next day, on June 25, 2013, the Court ordered "that the above-captioned action is discontinued without costs to any party and without prejudice to restoring the action to this Court's docket if the application to restore the action is made within thirty (30) days." Dkt. 10 at 1. Neither party did so, although seven days after the deadline, on August 1, 2013, Petitioner requested that "the Court hold its order in abeyance for an additional 30 days." Dkt. 11 at 1. Also on August 1, 2013, Petitioner filed her demand for arbitration. Gorman Decl. Ex. H.

On August 29, 2013, the parties executed a stipulation of dismissal. *See* Lucciola Decl. Ex. 4. This stipulation stated that "Katz reserves and retains all defenses to [Petitioner's] claims and does not waive any defenses to [Petitioner's] claims, including those based on the timeliness of [Petitioner's] alleged claims." *Id*. ¶ 4. On September 3, 2013, the Court endorsed a letter from Petitioner requesting "that the Court enter a docket [*sic*] indicating that the Complaint is withdrawn as the parties have agreed to submit the claims contained therein to binding arbitration." Dkt. 18 at 1.

Arbitration then proceeded before the Honorable Theodore Katz (ret.) (the "Arbitrator"). Prior to discovery, Respondent, "over [Petitioner's] objection, made a . . . motion to dismiss the arbitration . . . based on their claim that Plaintiff failed to 'timely demand arbitration.'" Petr.'s Mem. at 3. On July 16, 2014, the Arbitrator denied the motion to dismiss, concluding that although Petitioner's claims likely ran afoul of the statute of limitations, "there are issues of fact relevant to whether equitable estoppel or equitable tolling would bar a statute of limitations defense." Lucciola Decl. Ex. 1, at 18 (hereinafter the "Motion to Dismiss Decision"). The parties thus proceeded to discovery. *Id*.

3

Following discovery, Respondent moved for summary judgment on the same statute of limitations grounds. On July 1, 2015, the Arbitrator concluded that Petitioner's claims were time-barred, that no tolling or estoppel doctrines prevented dismissal, and that the discrimination claims should thus be dismissed. Lucciola Decl. Ex. 2 (hereinafter the "Summary Judgment Decision" or "SJ Decision"), at 9. He first evaluated the Employment Agreement's arbitration clause, which required claims to "be received within the applicable/relevant statute of limitations period." *Id.* at 7. The Arbitrator found that this provision mandated that Petitioner file her demand for arbitration within ninety days of her receipt of the right-to-sue letter from the EEOC, because the ninety-day limitation applicable to Title VII and the ADEA was the only statute of limitations to which the Employment Agreement might refer. He reasoned that "[a]ny other construction would result in there being no limitations period for commencing an arbitration"—an unreasonable construction given that the Employment Agreement expressly incorporated some statute of limitations. *Id.* at 7–8. In light of this limitations period, the Arbitrator found that Petitioner's action was untimely because her demand for arbitration was filed more than fourteen months after she received the right-to-sue letter. *Id.* at 9.

In reaching his conclusion, the Arbitrator rejected Petitioner's argument that the demand for arbitration was timely because Respondent received notice of Petitioner's allegations within the limitations period as a result of Petitioner's timely filing of the federal complaint. *Id.* at 8 n.3. The Arbitrator noted that this notice argument was contrary to the arbitration provision, which "states that if the claims are received after the limitations period has passed they shall be deemed null and void (obviously, by the arbitrator)." *Id.* He also rejected Petitioner's argument that Respondent waived any limitations defenses by agreeing to arbitration because the "parties'

Stipulation states explicitly: '[Respondent] does not waive any defense to [Petitioner's] claims, including those based on the timeliness of [Petitioner's] alleged claims.'" *Id.* at 9 n.4.

The Arbitrator next considered whether the statute of limitations should be tolled while Petitioner's claims were pending before this Court. He concluded that "[t]he overwhelming weight of authority supports Respondent's position that the filing of a suit, which is subsequently dismissed for improper venue or other reasons, does not toll the [ninty-day] limitations period." *Id.* at 10 (citing *Copeland v. Rosen*, 25 F. App'x 17, 19 (2d Cir. 2001) ("[W]e now conclude that a Title VII action . . . must be brought within 90 days of receipt of an EEOC right-to-sue letter, and the timely filing of a complaint does not suspend the limitations period.")). "Moreover," he went on, "even if [the pendency of the federal suit] had tolled the limitations period" the claim would be barred. *Id.* at 11–12. He reasoned that because the federal complaint was filed with only nine days remaining in the ninety-day limitations period, and thirty seven days had passed between the dismissal of the federal action on June 25, 2013 and the filing of the demand for arbitration on August 1, 2013, "with or without tolling during the pendency of the federal suit, the Demand for Arbitration was untimely." *Id.*

The Arbitrator also considered whether the doctrine of equitable estoppel or equitable tolling should apply, finding both inapplicable. The Arbitrator preliminarily noted that, although the motion to dismiss was denied to allow Petitioner to make an equitable tolling or estoppel argument, Petitioner "d[id] not argue that Respondent is equitably estopped from asserting a statute of limitations defense," nor did she "articulate a defense based on equitable tolling." *Id.* at 13, 16 n.5. "Nonetheless," the Arbitrator stated, Petitioner was "given an opportunity to demonstrate that she is entitled to benefit from the doctrine[s]." *Id.* at 16 n.5. Regarding equitable estoppel, the Arbitrator concluded that Petitioner "offered no evidence of misrepresentation or misconduct on

Respondent's part, let alone misrepresentation that a reasonable fact-finder could view as being the cause of [Petitioner's] failure to timely file her claims in arbitration." *Id.* at 14. With respect to equitable tolling, he found Petitioner's "lack of diligence for close to a year" prevented its application. *Id.* at 22.

On October 5, 2015, Petitioner filed the present Petition to vacate the Arbitrator's decision.

## STANDARD OF REVIEW

The Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007). Courts in this circuit will therefore vacate an arbitration award "only upon finding a violation of one of the four statutory bases [enumerated in the Federal Arbitration Act (the "FAA")], or, more rarely, if [the court] find[s] a panel has acted in manifest disregard of the law." *Porzig*, 497 F.3d at 139; *accord Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 588 (2d Cir. 2016). The four statutory grounds for vacatur are: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case. Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm

the award." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal citations and quotation marks omitted).[1]

Confirmation of an arbitration award, by contrast, is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *Id.* (internal quotation marks omitted).

## DISCUSSION

In petitioning to vacate the arbitral award, Petitioner asserts that the Arbitrator manifestly disregarded federal law, exceeded his powers, and was not impartial. Respondent argues that this Court lacks subject matter jurisdiction to decide the Petition. In the alternative, it contests Petitioner's contentions on the merits and cross-petitions to confirm the arbitral award. Because the Court has jurisdiction but finds the Petition fails to meet the strict standard under the FAA, the Petition is denied, Respondent's Cross-Petition is granted, and the arbitration award is confirmed.

## I.   Subject Matter Jurisdiction

Before reaching the merits of the Petition, the Court is obliged to ensure that it has subject matter jurisdiction. Petitioner seeks to assert federal jurisdiction based on her contention that the Arbitrator manifestly disregarded federal law in concluding that the right-to-sue letter's ninety-day limitations period applied to her filing of a demand for arbitration. Petr.'s Mem. at 14–15.

---

[1] Although Petitioner does not raise the issue, the arbitration clause in Petitioner's Employment Agreement purports to require that the Court engage in *de novo* review of the arbitral award. *See* Employment Agreement ¶ 14. The provision, however, is unenforceable as it would be contrary to the "plain and unqualified language of the Court of Appeals [for the Second Circuit] . . . to prohibit parties from contracting around the standard of review outlined in the FAA." *McQueen-Starling v. UnitedHealth Grp., Inc.*, 654 F. Supp. 2d 154, 163 (S.D.N.Y. 2009); *see also Esso Expl. & Prod. Chad, Inc. v. Taylors Int'l Servs., Ltd.*, 293 F. App'x 34, 35 (2d Cir. 2008) ("Defendant's argument that the parties contracted for a heightened standard of review is squarely foreclosed by the Supreme Court's recent decision in *Hall Street Assocs., LLC v. Mattel, Inc.*, 522 U.S. 576 (2008).").

Respondent argues that the issue presented by Petitioner is too insignificant to support federal question jurisdiction. Resp.'s Opp. at 10.

Although the FAA provides for the confirmation, modification, and vacatur of arbitral awards, "it is well-settled that the FAA does not confer subject matter jurisdiction on the federal courts." *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 25 (2d Cir. 2000). However, if a petitioner "principally and in good faith" challenges an arbitral award on the ground that it "was rendered in manifest disregard of federal law, a substantial federal question is presented and the federal courts have jurisdiction to entertain the petition." *Id.* at 27. "This Court maintains jurisdiction even if it later concludes that the Arbitrator did not manifestly disregard federal law." *Cardinale v. 267 Sixth St. LLC*, No. 13-CV-4845 (JFK), 2014 WL 4799691, at *4 (S.D.N.Y. Sept. 26, 2014).

Petitioner's allegations give rise to federal jurisdiction. To adjudicate Petitioner's claims, the Court must necessarily "determine what the federal law is." *Greenberg*, 220 F.3d at 27. In particular, the Court must evaluate Petitioner's arguments about the statute of limitations applicable to Title VII and the ADEA as well as the doctrines of tolling and estoppel associated with that limitations period. These issues sufficiently immerse this Court "in questions of federal law and their proper application that federal subject matter jurisdiction is present." *Id.*; *see also Shapiro v. McManus*, 136 S. Ct. 450, 455 (2015) ("We have long distinguished between failing to raise a substantial federal question for jurisdictional purposes . . . and failing to state a claim for relief on the merits; only 'wholly insubstantial and frivolous' claims implicate the former." (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

Although the parties do not raise the issue, some courts have concluded that the Supreme Court's decision in *Vaden v. Discover Bank*, 556 U.S. 49 (2009)—which articulated a

jurisdictional standard based on "whether the parties' substantive conflict gives rise to federal-question jurisdiction"—abrogated the Second Circuit's *Greenberg* decision. *Santos v. Gen. Elec. Co.*, No. 10-CV-6948 (JSR) (MHD), 2011 WL 5563544, at \*6 (S.D.N.Y. Sept. 28, 2011), *report and recommendation adopted,* No. 10-CV-6948 (JSR), 2011 WL 5563536 (S.D.N.Y. Nov. 15, 2011); *see also Doscher v. Sea Port Grp. Sec., LLC*, No. 15-CV-384 (JMF), 2015 WL 4643159, at \*3 (S.D.N.Y. Aug. 5, 2015) ("In fairness, *Vaden* does raise doubts about the validity of *Greenberg.*"). Other courts have reached the opposite "conclusion in the wake of *Vaden*, reasoning that the Supreme Court's decision 'rested on language specific to § 4 that does not appear in . . . [§] 10.'" *Doscher*, 2015 WL 4643159, at \*4 (alterations in original) (quoting *Royal Bank Am. v. Kirkpatrick*, Nos. 11-CV-1058, 11-CV-1112 (TJS), 2011 WL 4528349, at \*3 n.5 (E.D. Pa. Sept. 30, 2011)). The Court need not weigh in on this dispute, however, as even assuming that the *Vaden* standard applies, it is met here because the "parties' substantive conflict" under Title VII and the ADEA would "give[] rise to federal–question jurisdiction." *Santos*, 2011 WL 5563544, at \*6.

## II. Review Under the FAA

### A. Manifest Disregard of Federal Law

Petitioner first argues that the Arbitrator manifestly disregarded federal law. To vacate an arbitral award for manifest disregard of federal law, Petitioner must show that: (1) "'the governing law alleged to have been ignored by the arbitrator[] was well defined, explicit, and clearly applicable,'" and (2) "the arbitrator knew about 'the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it.'" *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 n.1 (2d Cir. 2011) (quoting *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 209 (2d Cir. 2002)). Courts "will not vacate an award because of 'a simple error in law or a failure by the arbitrators to understand or apply it' but only when a party clearly demonstrates 'that the panel

9

intentionally defied the law.'" *STMicroelectronics, N.V. v. Credit Suisse Secs. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003)).

Petitioner argues that the Arbitrator disregarded federal law in applying the ninety-day statute of limitations and failing to equitably toll her claims.[2] Regarding the statute of limitations, Petitioner asserts that "the Arbitrator, on his own and without any statutory or applicable legal precedent in support, simply 'created' this ninety day statute of limitations period for the filing of a demand for arbitration." Petr.'s Mem. at 15. Nowhere, however, does Petitioner identify the "well defined, explicit, and clearly applicable" law that precluded the Arbitrator from interpreting the Employment Agreement to incorporate Title VII and the ADEA's ninety-day limitations period. *Jock*, 646 F.3d at 121 n.1. To the contrary, the Second Circuit addressed a similar issue in *Anthony v. Affiliated Computer Servs., Inc.*, 621 F. App'x 49 (2d Cir. 2015), in which the court refused to vacate an arbitral decision that barred race and age discrimination claims under Title VII and the ADEA's ninety-day statute of limitations. *Id.* at 51–52. In considering whether the arbitrator had abused his discretion, the court held that "the arbitrator was clearly construing the [arbitration clause] in applying the limitations period: she concluded that Anthony's proposition that the limitations period does not apply in the arbitral forum 'contravene[d] the explicit language' of the [clause]." *Id.* at 51. Similarly here, the Arbitrator found that the ninety-day limitations period was mandated by the Employment Agreement because "[a]ny other construction would result in there being no limitations period for commencing an arbitration," which would be

---

[2] Petitioner also argues that she "did not waive her right to arbitration on the merits by agreeing to withdraw the complaint." Petr.'s Mem. at 20. The Arbitrator, however, did not find that Petitioner had waived her claims but that they were barred by the statute of limitations. As the Arbitrator stated, Petitioner "continues to assert the irrelevant argument that she did not waive her right to arbitrate. [Respondent] has never argued that she waived her right to arbitrate and the concept of waiver is simply not in issue." SJ Decision at 16 n. 5. This Court agrees.

contrary to the provision requiring that claims "be received within the applicable/relevant statute of limitations period." SJ Decision at 7–8. The Court finds this reasoning persuasive. Further, to the extent Petitioner challenges the Arbitrator's determination that the pendency of a federal suit does not toll the limitations period, it is rejected as the Court agrees with the Arbitrator that "with or without tolling during the pendency of the federal suit, the Demand for Arbitration was untimely." SJ Decision at 11. The Arbitrator's decision to impose the ninety-day limitations period thus did not disregard "well defined, explicit, and clearly applicable" federal law. *Jock*, 646 F.3d at 121 n.1.

Petitioner also asserts that "[t]he Arbitrator improvidently and in manifest disregard of the law concluded that Defendant was not equitably [tolled] from ascertaining the defense of statute of limitations" [*sic*]. Petr.'s Mem. at 17.[3] Specifically, Petitioner challenges the Arbitrator's determination that Petitioner was not entitled to equitable tolling because "[t]he undisputed record clearly demonstrates that [Petitioner] did not act diligently throughout the period she seeks to have tolled." SJ Decision at 17. According to the Petition, this ruling was "in manifest disregard and misapplication of the *Polanco* [*v. U.S. Drug Enf't Admin.*, 158 F.3d 647 (2d Cir. 1998)]" [*sic*] because, in Petitioner's view, that case stands for the proposition that the filing of a suit in the wrong forum itself constitutes reasonable diligence. Petr.'s Mem. at 18–19 ("Indeed, precisely because the [p]laintiff sought his remedy within the applicable limitations period, the [*Polanco* court] reasoned that he had acted diligently within that period."). The Court disagrees.

The Arbitrator's interpretation of *Polanco*—that the filing of a suit alone does not necessarily constitute reasonable diligence—did not manifestly disregard the law. In *Polanco*, the court stated that the doctrine of equitable tolling "allows a district court to toll the statute of

---

[3] Although Petitioner references "equitable estoppel," Petr.'s Mem. at 17, the cases she cites address the doctrine of equitable tolling.

limitations where, *inter alia*, a plaintiff initially 'asserted his rights in the wrong forum'" but that "[t]o avail himself of this doctrine, the [p]laintiff must show that he 'pass[ed] with reasonable diligence through the period [he] seeks to have tolled.'" 158 F.3d at 655 (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)). This diligence requirement has been cited to reject the very argument Plaintiff makes here. In *Wang v. Palmisano*, No. 13-CV-2186 (KMK), 2016 WL 319862 (S.D.N.Y. Jan. 26, 2016), for instance, the court held that the "[p]laintiff's suggestion that asserting claims in the wrong forum can, itself, amount to sufficiently extraordinary circumstances to warrant equitable tolling fails; otherwise, equitable tolling would be a 'cure-all for an entirely common state of affairs' rather than 'a rare remedy to be applied in unusual circumstances.'" *Id.* at *9 (quoting *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 479 (S.D.N.Y. 2008)). Consistent with *Polanco* and *Wang*, the Arbitrator determined that the filing of a complaint in the wrong forum equitably tolled a claim only when accompanied by reasonable diligence. SJ Decision at 15–17.

Here, the Arbitrator rightly determined that, after the federal suit was filed, Petitioner demonstrated "a lack of diligence for close to a year, both during and subsequent to the federal litigation." SJ Decision at 22. The Arbitrator recounted, for example, that "[o]n October 2, 2012, Respondent's counsel spoke with [Petitioner's] counsel who requested that Respondent draft a stipulation memorializing the terms of the parties' agreement to dismiss the federal action and initiate the arbitration," which was "sent to [Petitioner's] counsel on October 16, 2012, with a request for a response by the end of the week." *Id.* at 17–18. When "[t]here was no response . . . the proposed stipulation was sent again on October 25, 2012. Further requests for a response were sent on December 8 and 12, 2012." *Id.* at 18. "On January 9, 2013, a slightly revised draft of the stipulation was sent to [Petitioner's] counsel for his signature" but "[b]y April 24, 2013 Petitioner

had still not signed the stipulation, which was sent once again." *Id.* It was not until "May 2, 2013, by which time virtually no activity had occurred in the litigation, [that] the court held a telephonic conference with counsel about dismissal of the action." *Id.* Based on these delays, and others detailed in the Summary Judgment Decision, the Arbitrator concluded that Petitioner exhibited insufficient diligence to invoke equitable tolling—a failure that he described as "a self-inflicted wound." *Id.* at 22 (internal quotation marks and citation omitted). This conclusion was a reasonable application of *Polanco* and other Second Circuit precedent and thus did not manifestly disregard federal law.

### B.    Additional FAA Arguments

Petitioner further contends that the Arbitrator exceeded his powers and was not impartial. 9 U.S.C. §§ 10(a)(2), 10(a)(4). Both of these arguments are meritless.

The Arbitrator did not exceed his powers. This inquiry "'focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue.'" *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 346 (2d Cir. 2010) (quoting *Westerbeke Corp.*, 304 F.3d at 220). In other words, "the sole question . . . is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013). Here, the arbitration clause in Petitioner's Employment Agreement explicitly gave the Arbitrator the authority to consider a statute of limitations defense. *See* Employment Agreement ¶ 14 ("Any claims received after the applicable/relevant statute of limitations period has passed shall be deemed null and void."). To suggest that the Arbitrator exceeded his powers by dismissing Petitioner's claims as untimely is thus without merit.

Petitioner's allegations regarding the purported partiality are similarly baseless. An arbitral award can be vacated on this ground when "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 548 (2d Cir. 2016) (quoting *Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 64 (2d Cir. 2012)). Petitioner asserts that the Arbitrator was partial to Respondent because, during the pendency of the parties' arbitration, he accepted appointment to another arbitral panel where one of the parties was represented by a lawyer who also worked at the firm of Respondent's counsel. Petr.'s Mem. at 22–24. But counsel's firm employs more than six hundred attorneys. Resp.'s Opp. at 3. No reasonable person would "have" to conclude that the arbitrator was biased in Respondent's favor, merely because he would hear another case in which Respondent counsel's firm was also involved. The arbitrator was not evidently partial in Respondent's favor.

Petitioner has thus identified no grounds under the FAA on which it would be proper to vacate the arbitral award.

### III.  Cross-Petition to Confirm

A "court must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed" by the FAA. *Hall*, 552 U.S. at 582 (internal quotation marks omitted). "There is nothing malleable about [this standard], which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Id.* at 587. Since Petitioner has identified no meritorious basis for vacating the award under the FAA, Respondent's Cross-Petition to confirm the award is granted. *See Scandinavian Reins. Co.*, 668 F.3d at 78–79. ("[Petitioner] has identified no basis other than the asserted evident partiality for vacating the Award under the

FAA. . . . Because we conclude that evident partiality was absent, [respondent's] cross-petition to confirm the Award must be granted.").

## CONCLUSION

For the foregoing reasons, Hagan's Petition is denied and Respondent Katz's Cross-Petition is granted. The Clerk of Court is respectfully directed to enter judgment in Respondent's favor, terminate docket entries 22 and 31, and close the case.

SO ORDERED.

Dated:     August 3, 2016
          New York, New York

                                       Ronnie Abrams
                                       United States District Judge